*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

NOSSONAL KLEINFELDT,

      Plaintiff-Appellee,

v

NICOLE STERN,

      Defendant-Appellant.

UNPUBLISHED
April 18, 2024

No. 365506
Oakland Circuit Court
LC No. 2022-511266-DC

---

NOSSONAL KLEINFELDT,

      Plaintiff-Appellee/Cross-Appellant,

v

NICOLE STERN,

      Defendant-Appellant/Cross-Appellee.

No. 366777
Oakland Circuit Court
LC No. 2022-511266-DC

---

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals by leave granted the trial court's March 10, 2023 opinion and order awarding the parties joint legal and physical custody of their minor child, AK, and establishing a parenting-time schedule.[2] In Docket No. 366777, defendant appeals

---

[1] *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered July 26, 2023 (Docket Nos. 365506; 366777).

[2] Defendant originally appealed this order as of right in Docket No. 365286, but the order was not a final order because the trial court did not decide the issue of child support, which it instead referred to the Friend of the Court for an investigation and recommendation. Therefore, this Court

-1-

as of right and plaintiff cross-appeals the trial court's July 5, 2023 order requiring plaintiff to pay child support.[3]  We affirm in part, vacate in part, and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff and defendant are the parents of AK.  Plaintiff is an ophthalmologist who practices and performs surgery as a partner in an ophthalmic medical practice in Michigan.  Plaintiff has resided in Michigan since 1990.  While plaintiff was in Florida in March 2020, he met defendant through an online dating application.  Before meeting plaintiff, defendant lived in Florida for 13 years.  Defendant owned a home and a business in Florida, where she has family and friends.

When plaintiff returned to Michigan, he and defendant continued to communicate with each other.  In May 2020, plaintiff returned to Florida, where he met defendant in person for the first time.  At the end of May 2020, defendant and a friend drove to Michigan and stayed with plaintiff in his Birmingham home until July 2020, when plaintiff and defendant ended their relationship.  Defendant returned to Florida.  However, the couple continued to communicate with each other and eventually got back together when defendant returned to Michigan for a friend's wedding in August 2020.  The next month, defendant returned to Florida with plaintiff.  After the couple returned to Michigan together, defendant became pregnant with AK in October 2020.  In December 2020, plaintiff and defendant became engaged while in Florida.  The couple returned to Michigan after the holidays.

After their engagement, plaintiff decided to sell his Birmingham home.  Plaintiff contacted a realtor in Florida to purchase a house in Boca Raton.  After the sale of plaintiff's Birmingham home, defendant and plaintiff moved into a rental house in Bloomfield Hills in March 2021.  On April 6, 2021, plaintiff put a house under contract in Boca Raton for $2.5 million with plans to close on March 1, 2022.  The couple stayed in the Bloomfield Hills residence throughout defendant's pregnancy and remained there for four months after AK's birth in July 2021, when they returned to Florida for two weeks.

During this time, plaintiff met with an attorney to draft proposed custody and parenting agreements because the parties were not married and had no immediate plans to marry.  The couple engaged in many talks about a settlement agreement, which continued after plaintiff filed his

---

granted plaintiff's motion to dismiss the appeal for lack of jurisdiction because the order was "not a final order appealable by right." *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered March 29, 2023 (Docket No. 365286).

[3] Although this Court's order granting defendant's application for leave to appeal in Docket No. 365506 granted the application "limited to the issue of whether the circuit court erred by finding that the minor child had an established custodial environment with both parents," *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered May 10, 2023 (Docket No. 365506), defendant's claim of appeal in Docket No. 366777 is from a final order, which permits defendant to raise issues on appeal related to the trial court's prior orders. *Green v Ziegelman*, 282 Mich App 292, 301; 767 NW2d 660 (2009).  Plaintiff's challenge to this Court's jurisdiction in Docket No. 366777 is addressed in Part II of this opinion.

complaint for custody in January 2022. All of the proposed agreements provided for defendant's return to Florida with the child. The agreements allowed plaintiff to visit the child on Thursday through Sunday every other weekend, and any other time that his work schedule allowed him to travel to Florida. The parties could not come to an agreement.

Plaintiff was with defendant at the hospital when AK was born. Thereafter, plaintiff signed an affidavit of parentage and took two weeks of paternity leave. After the two weeks, plaintiff returned to work full time. Plaintiff resumed his almost daily attendance at the gym, and two or three classes of jiu jitsu each week. Defendant was unhappy with the amount of time that plaintiff spent outside the home both before and after the child was born. After AK was born, defendant expressed her desire to return to Florida. AK's pediatrician recommended that they wait until after AK's four-month wellness visit before traveling to Florida. Defendant and AK went to Florida on November 5, 2021, and stayed until January 2, 2022. Plaintiff visited defendant and AK four or five times during this period including an extended stay over the holidays.

Plaintiff, defendant, and AK returned to Michigan on January 2, 2022, but defendant and AK went back to Florida on January 23, 2022. Plaintiff filed this custody action the next day. Defendant and AK returned to Michigan on February 13, 2022, and stayed until March 7, 2022. During this time, the couple experienced problems in their relationship and defendant did not believe that they were going to remain in a relationship. On March 7, 2022, defendant returned to Florida with AK, but they returned to Michigan on April 13, 2022. On May 20, 2022, defendant and returned to Florida permanently with AK after ending her relationship with plaintiff. Between May 20, 2022, and July 2022, plaintiff flew to Florida to see AK approximately every other weekend.

On June 6, 2022, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(4), arguing that Michigan did not have jurisdiction over this custody dispute under the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"), MCL 722.1101 *et seq.* Defendant asserted that Florida was the appropriate jurisdiction for a custody determination. Defendant stated that she had filed a petition for custody in Florida on March 11, 2022, and she was a resident of Florida. Defendant asserted that she was present in Michigan only while she and plaintiff were pursuing a relationship, but that both parties always intended to live and raise the child in Florida.

In response, plaintiff asserted that Michigan was the child's home state pursuant to MCL 722.1102, because the child was born in Michigan and had lived in Michigan until November 2021. Plaintiff stated that defendant took the child back and forth between Florida and Michigan from November 2021 through May 2022, during which time plaintiff periodically visited with defendant and AK in Florida. Plaintiff further argued that even if Michigan was not the child's home state pursuant to MCL 722.1102, the child had significant connections with Michigan and there was substantial evidence in Michigan concerning the child's care, protection, training, and personal relationships.

On August 18, 2022, the trial court participated in a UCCJEA conference with the Florida court. The Michigan trial court noted that the parties had appeared before it many times and plaintiff requested parenting time in Michigan, but the court could not enter a parenting-time order before jurisdiction was decided. The Florida court observed that a majority of the contacts had

been in Michigan and that the parties had been litigating or attempting to litigate in Michigan. The Florida court also noted that it had never seen the parties, that neither party had sought affirmative relief in the Florida court, and that the UCCJEA affidavit that defendant filed was inaccurate. The Florida court further noted that the Michigan court was familiar with the case and opined that the case belonged in Michigan, unless there were other reasons that had not yet been identified.

Following the UCCJEA conference, the trial court denied defendant's motion for summary disposition and held that Michigan had jurisdiction. The trial court found that the child had not lived in one state exclusively for six months at the time plaintiff filed the complaint. The court found that the child had lived in Michigan longer than he had lived in Florida at the time this action was filed, but it could not conclude that Michigan was the child's home state on that basis alone. Rather, the trial court found that jurisdiction was proper in Michigan because the child had a significant connection with Michigan, including that the child was born in Michigan, the child had lived in Michigan longer than Florida at the time of the filing, the child received care from a pediatrician and a dermatologist in Michigan, and the parties had hired a nanny for the child in Michigan. The court also observed that Michigan is the plaintiff's home state, the affidavit of parentage was signed in Michigan, and the child received his social security card in Michigan. Although defendant had a home and business in Florida, and plaintiff traveled to Florida to visit defendant and the child, the trial court's focus was on the child's residence and contacts at the time of filing. Accordingly, the trial court found that the child and plaintiff had significant contacts with Michigan, and it ruled that Michigan had jurisdiction as a result of those contacts.

The court thereafter conducted a custody hearing over seven non-consecutive days beginning in December 2022 and ending in February 2023. Plaintiff requested joint legal and physical custody, and equal parenting time on a 2/2/3 schedule. Plaintiff further requested that the child reside in Michigan. Plaintiff requested that if defendant chose to exercise her parenting time outside of Michigan, it should be exercised during the first two weeks of the month, with the balance of the month allocated to plaintiff.

Defendant argued that AK's established custodial environment was solely with her. Defendant requested sole legal and physical custody of the child, and requested that AK be allowed to return to his home in Florida with defendant.[4] Defendant also asked that the current parenting-time schedule, which allowed for plaintiff's parenting time every other week from Thursday to Sunday, with a rotating holiday schedule, continue. Defendant also asked the trial court to require plaintiff to pay her attorney fees.

The trial court issued a written opinion and order on March 10, 2023, in which it decided the issues of custody, parenting time, the child's domicile, and attorney fees. The court found that AK had an established custodial environment with both parties, and further found that most of the statutory best-interest factors, MCL 722.23, equally favored both parties. Accordingly, the court awarded the parties joint legal and physical custody of the child. The trial court further found that

---

[4] On October 13, 2022, the trial court entered an order requiring that the child be returned to Michigan. Defendant also returned to Michigan to be with the child, and resided in a hotel until the conclusion of the custody hearing.

the child's domicile was in Michigan, and it prohibited a change of that domicile without the approval of the court. The court awarded the parties equal parenting time, in two-week increments, with exchanges to be made on Saturdays at a Florida airport, and an alternate holiday schedule. The trial court denied defendant's request for attorney fees. Finally, because the court did not have sufficient information to decide the issue of child support, it deferred ruling on that issue and referred the matter to the Friend of the Court for an investigation.

Defendant initially filed a claim of appeal from the trial court's March 10, 2023 opinion and order, but because the trial court had not decided the issue of child support, this Court dismissed the appeal for lack of jurisdiction as the order was not a final order appealable as of right. *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered March 29, 2023 (Docket No. 365286). Defendant then immediately filed an application for leave to appeal the order. On April 3, 2023, this Court entered an order staying enforcement of the March 10 order pending resolution of defendant's application for leave to appeal. *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered April 3, 2023 (Docket No. 365506). In the meantime, on March 22, 2023, the trial court entered a judgment that incorporated its March 10 order, with the additional finding that the child had a residence with both plaintiff and defendant.

On April 10, 2023, while defendant's application for leave to appeal in Docket No. 365506 was still pending, plaintiff filed an emergency motion to show-cause defendant for removing AK from Michigan and refusing to meet at the Florida airport with AK for plaintiff's scheduled two-week parenting time in Michigan in accordance with the custody order. Although this Court had stayed enforcement of the March 10 opinion and order, it was plaintiff's position that the identical parenting-time provision in the trial court's March 22 judgment remained enforceable because defendant had not included that judgment in her application for leave to appeal. In response, defendant argued the March 22 judgment was merely a codification of the March 10 order and mirrors the very same parenting time terms stayed by this Court. On April 12, 2023, the trial court denied plaintiff's motion, ruling that there was not an emergency, and ordered the parties to brief the issue whether a stay of the March 10 opinion and order also stayed the March 22 judgment of custody. The trial court denied plaintiff's motion to show-cause defendant.

On April 12, 2023, the same day the trial court denied plaintiff's motion above, plaintiff filed another emergency motion for enforcement of parenting time, or in the alternative, an order for temporary parenting time pending resolution of this Court's stay. Plaintiff again argued that this Court's stay order did not affect the enforceability of the March 22 judgment. On April 21, 2023, the trial court denied plaintiff's motion to enforce the parenting-time provisions in its March 22 judgment, ruling that enforcement would violate this Court's April 3 stay. The court reserved a decision on plaintiff's request for makeup parenting time.

On May 10, 2023, this Court granted defendant's application for leave to appeal, "limited to the issue of whether the circuit court erred by finding that the minor child had an established custodial environment with both parents." *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, issued May 10, 2023 (Docket No. 365506). Additionally, this Court peremptorily vacated "the portion of the trial court's March 10, 2023 order setting the parties' parenting time in two-week increments alternating between Florida and Michigan, which effectively requires the 22-month-old child to fly from Michigan to Florida or back every two weeks, . . . as an abuse of discretion." *Id.* This Court also ordered that the "April 3, 2023 order staying enforcement of the

-5-

March 10, 2023 opinion and order is now moot and DISSOLVED." *Id.* After plaintiff filed a motion for clarification of this Court's May 10, 2023 order, this Court issued an order on June 5, 2023, which provided, in pertinent part:

> The trial court's March 10, 2023 order is VACATED only to the extent it set the parenting time in two-week increments alternating between Florida and Michigan, which effectively required the minor child to fly from Michigan to Florida or back every two weeks. That schedule remains vacated as an abuse of discretion. *Merecki v Merecki*, 336 Mich App 639, 971 NW2d 659 (2021); *Brown v Brown*, 332 Mich App 1; 955 NW2d 515 (2020). While this appeal remains pending the trial court is directed to issue an interim parenting time order allowing plaintiff meaningful parenting time in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and plaintiff without requiring excessive travel for the child. MCL 722.27a(1). [*Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered June 5, 2023 (Docket No. 365506).]

Plaintiff subsequently filed a motion for return of the child to Michigan and for parenting time on Father's Day and at other times in Michigan pursuant to this Court's June 5, 2023 order. On July 6, 2023, the trial court issued an order stating that it had previously verbally ordered that plaintiff was to have parenting time for Father's Day in Michigan, beginning Friday, June 16, 2023, and ending Sunday, June 25, 2023. In addition, the trial court ordered the following schedule for plaintiff's parenting time:

- July 6 through July 9 in Florida.

- July 21 through July 28 in Michigan. Plaintiff to fly to Florida for the exchange at the airport on July 21 at 1:00 p.m. and return the child at the Florida airport on July 28 at 1:00 p.m.

- August 3 through August 6 in Florida

- August 18 through August 25 in Michigan following the same exchange schedule as explained above.

- August 31 through September 3 in Florida

- September 15 through September 22 in Michigan.

On July 5, 2023, the trial court entered a final Uniform Child Support Order ("UCSO"), which ordered plaintiff to pay defendant $5,754 a month in child support. On July 7, 2023, defendant filed a claim of appeal in this Court in Docket No. 366777 from the UCSO. On July 10, 2023, however, the trial court ordered that the July 5, 2023 UCSO "be removed" from the court file because the order was improperly filed, but it then re-entered that order on July 17, 2023.

## II. THIS COURT'S JURISDICTION

Preliminarily, plaintiff argues that this Court's jurisdiction over these appeals is limited to consideration of an established custodial environment, which was the limited issue for which this

Court granted defendant's application for leave to appeal in Docket No. 365506, because the July 5, 2023 UCSO order from which defendant filed her claim in Docket No. 366777 was later "removed," leaving no final order to support this Court's jurisdiction. The record indicates that the UCSO the court originally entered on July 5, 2023 included a four-page attachment of confidential calculations that included the parties' incomes. On July 10, 2023, the trial court entered an order "removing" the July 5, 2023 UCSO from the file because it had been improperly filed. The trial court re-entered a UCSO on July 17, 2023, which is identical to the UCSO entered on July 5, 2023, but without the confidential calculations.

Plaintiff's position is that because defendant only claimed an appeal from the July 5 order, and because that order was the final order that purportedly provides this Court with jurisdiction in Docket No. 366777 to consider all issues outside the limited grant of leave to appeal in Docket No. 365506, but has since been "removed," the appeal in Docket No. 366777 is from a nonexistent order, thereby depriving this Court of jurisdiction to consider any issues in Docket No. 366777.

Initially, we consider whether the trial court had authority to vacate or modify the July 5 UCSO after defendant filed her claim of appeal on July 7. MCR 7.208(A) provides:

> After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except
>
> (1) by order of the Court of Appeals,
>
> (2) by stipulation of the parties,
>
> (3) after a decision on the merits in an action in which a preliminary injunction was granted, or
>
> (4) as otherwise provided by law.

In *Lemmen v Lemmen*, 481 Mich 165, 166; 749 NW2d 255 (2008), our Supreme Court held that the Legislature's grant of continuing jurisdiction to trial courts to modify child support orders in divorce proceedings pursuant to MCL 552.17(1) satisfies the "otherwise provided by law" requirement of MCR 7.208(A)(4), thereby allowing modification of a final judgment after a claim of appeal has been filed to ensure the welfare of children as circumstances change. See also *Safdar v Aziz*, 501 Mich 213, 219; 912 NW2d 511 (2018) (holding that MCL 722.27(1) "authorizes the continuing jurisdiction of a circuit court to modify or amend its previous [custody] judgments or orders and is an exception to MCR 7.208(A)"). In this case, however, the trial court did not modify the July 5 UCSO pursuant to its authority under MCL 552.17(1), but merely to correct an apparent clerical error by removing extraneous confidential information that was inadvertently attached to the July 5 order. Indeed, the court re-entered its July 5 order on July 17, 2023, without altering the substantive content of that order; only the confidential attachment was removed. Because the trial court did not change the substantive content of the July 5 order pursuant to its authority under MCL 552.17, we find that the trial court did not set aside or amend the order within the meaning of MCR 7.208(A).

More significantly, even if the trial court had continuing jurisdiction to modify the July 5 order, we are not persuaded that its decision to do so could retroactively deprive this Court of jurisdiction that otherwise had properly attached at the time defendant filed her claim of appeal on July 7, 2023, when the July 5 order was still in effect. Although MCR 7.208(A) provides a trial court with authority to set aside or amend an order appealed under certain circumstances, it does not indicate that the effect of doing so deprives this Court of jurisdiction that had properly attached before the order appealed was set aside or amended. Accordingly, we reject plaintiff's challenge to this Court's jurisdiction to consider defendant's appeal in Docket No. 366777.

## III. UCCJEA JURISDICTION

Defendant argues that the trial court erred by denying her motion for summary disposition under MCR 2.116(C)(4) and determining that Michigan had jurisdiction under UCCJEA. We disagree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Wells Fargo Rail Corp v Michigan*, 344 Mich App 351, 358; 1 NW3d 373 (2022) (quotation marks and citation omitted). Summary disposition is proper under MCR 2.116(C)(4) when the trial court lacks jurisdiction over the subject matter. *Id.* "For jurisdictional questions under MCR 2.116(C)(4), this Court determines whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject-matter jurisdiction." *Id.* (quotation marks and citation omitted).

Further, as explained in *Cheesman v Williams*, 311 Mich App 147, 150-151; 874 NW2d 385 (2015):

> Absent a factual dispute, this Court reviews de novo, as a question of law, whether a trial court has jurisdiction under the UCCJEA. *Foster v Wolkowitz*, 486 Mich 356, 362; 785 NW2d 59 (2010). But even if a court may exercise jurisdiction under the UCCJEA, the decision [to] do so is " 'within the discretion of the trial court, and [will] not be reversed absent an abuse of that discretion.' " *Nash v Salter*, 280 Mich App 104, 108; 760 NW2d 612 (2008) (citation omitted). "Generally, an appellate court should defer to the trial court's judgment, and if the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Jamil v Jahan*, 280 Mich App 92, 100; 760 NW2d 266 (2008). Additionally, "[t]he clear legal error standard applies where the trial court errs in its choice, interpretation, or application of the existing law." *Foskett v Foskett*, 247 Mich App 1, 4-5; 634 NW2d 363 (2001). This Court reviews issues of statutory construction de novo. *Nash*, 280 Mich App at 108.

"The UCCJEA prescribes the powers and duties of the court in a child-custody proceeding involving Michigan and a proceeding or party outside of this state." *Cheesman*, 311 Mich App at 151 (quotation marks and citation omitted). Both Michigan and Florida have enacted the UCCJEA. MCL 722.1101 *et seq.*; Fl Stat 61.501 *et seq.* The parties do not dispute that defendant resides in Florida and commenced a child-custody proceeding in that state. Therefore, the trial court was required to apply the UCCJEA. *Cheesman*, 311 Mich App at 151. "MCL 722.1201(1)

is the exclusive jurisdictional basis for making a child-custody determination by a court of this state." *Id*. (quotation marks and citation omitted).  MCL 722.1201 provides:

> (1) Except as otherwise provided in section 204, a court of this state has jurisdiction to make an initial child-custody determination only in the following situations:

> (a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

> (b) A court of another state does not have jurisdiction under subdivision (a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 207 or 208,2 and the court finds both of the following:

> (*i*) The child and the child's parents, or the child and at least 1 parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

> (*ii*) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

> (c) All courts having jurisdiction under subdivision (a) or (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child under section 207 or 208.

> (d) No court of another state would have jurisdiction under subdivision (a), (b), or (c).

> (2) Subsection (1) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state.

> (3) Physical presence of, or personal jurisdiction over, a party or a child is neither necessary nor sufficient to make a child-custody determination.

The trial court concluded "that although the minor child has resided in the State of Michigan longer than the State of Florida at the time of filing, Michigan cannot determine jurisdiction based upon the Home State Analysis alone."  Plaintiff asserts that the trial court decided jurisdiction on the basis of its conclusion that Michigan was the child's home state pursuant to MCL 722.1201(1)(a).  He points to the language quoted above and also notes that the court later stated in its October 13, 2022 order that "based upon this Court's determination that Michigan is the home state of the minor child, the minor child shall be returned to the State of Michigan within 7 days of today's date."  We disagree that jurisdiction was established, or that the trial court found that it had jurisdiction, because Michigan was the child's home state.

"Home state" means the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with a parent or person acting as a parent. A period of temporary absence of a parent or person acting as a parent is included as part of the period. [MCL 722.1102(g).]

"Commencement" is defined as "the filing of the first pleading in a proceeding." MCL 722.1102(e). Plaintiff filed the first pleading of this custody dispute in Michigan on January 24, 2022. At the time of the filing of this pleading, AK was more than six months old. The parties agreed that AK lived in Michigan from July 1, 2021 to November 5, 2021, at which time defendant and AK went to Florida, but then returned to Michigan on January 2, 2022. Defendant and AK stayed in Michigan until January 23, 2022, when they returned to Florida. On February 13, 2022, defendant and AK returned to Michigan until March 7, 2022, when they flew back to Florida. On April 13, 2022, defendant and AK returned to Michigan until May 20, 2022, when they flew back to Florida.

Based on this timeline, AK did not live with any parent for at least six consecutive months in Michigan immediately before the commencement of this child-custody proceeding on January 22, 2022. "When Michigan is not the child's home state, the next question is whether another state is the child's home state." *Hernandez v Mayoral-Martinez*, 329 Mich App 206, 211; 942 NW2d 80 (2019). Defendant filed a petition for custody in Florida on March 11, 2022. Similarly, AK did not live with defendant for at least six consecutive months in Florida immediately before the commencement of the proceeding in Florida. Therefore, neither Michigan nor Florida qualified as AK's home state for purposes of home-state jurisdiction. Thus, notwithstanding the trial court's statements regarding "home state," jurisdiction in Michigan was not established under MCL 722.1201(1)(a). See *Fisher v Belcher*, 269 Mich App 247, 260-261; 713 NW2d 6 (2005).

If Michigan is not a child's home state and no other state has jurisdiction pursuant to MCL 722.1201(1)(a), the trial court must determine if it should exercise "significant connection" jurisdiction pursuant to MCL 722.1201(1)(b). *Cheesman*, 311 Mich App at 154. Under this subsection, if the trial court finds both (i) that the child and at least one parent have significant connections with Michigan, and (ii) substantial evidence is available in Michigan concerning the child's care, protection, training, and personal relationships, the trial court has jurisdiction to make an initial custody determination. MCL 722.1201(1)(b). The trial court found that it had jurisdiction under this subsection because AK and plaintiff both had a significant connection with Michigan and there was substantial evidence concerning the child's care, protection, training, and personal relationships in Michigan.

Defendant argues that the trial court erred by analyzing the child's connections to Michigan at the time of plaintiff's initial custody filing, rather than when the trial court issued its decision denying her motion for summary disposition. The record shows that AK and plaintiff both had significant connections to Michigan, both before and after plaintiff initiated this child-custody proceeding. A significant connection exists pursuant to MCL 722.1202(1) "as long as the child and at least one parent have an important or meaningful relationship to the state." *White v Harrison-White*, 280 Mich App 383, 390; 760 NW2d 691 (2008). This is established when "one

-10-

parent resides in the state, maintains a meaningful relationship with the child, and, in maintaining the relationship, exercises parenting time in the state." *Id*. at 392.

In this case, AK lived in Michigan with both parents from birth in July 2021 to November 2, 2021. AK then went to Florida with defendant from November 5, 2021 to January 2, 2022, but plaintiff visited them there every other weekend. After January 2, defendant and the child spent time in Michigan and Florida in roughly equal increments. After defendant and plaintiff ended their relationship on May 20, 2022, defendant and AK left for Florida. After defendant filed her motion for summary disposition, she continued to live in Florida with AK and plaintiff visited every other weekend from Thursday to Sunday.

The trial court did not err in finding that it had "significant connection" jurisdiction under the UCCJEA. Plaintiff resided in Michigan, AK was born in Michigan and had lived there the majority of the time before plaintiff filed this child-custody proceeding. Indeed, AK had lived in Michigan for 207 days from the time of his birth until defendant filed her motion for summary disposition. Although defendant and AK spent 116 days in Florida between November 5, 2022 and May 20, 2022, plaintiff and defendant were still in a relationship and defendant continued to return to Michigan until the end of their relationship in May 2022. Plaintiff maintained a meaningful relationship with AK while AK was in Michigan, and he regularly visited AK in Florida.

Although defendant argues that the trial court failed to analyze the substantial-evidence requirement, the trial court found that there was substantial evidence of other significant connections between the child and Michigan, including AK's medical care and relationships. While living in Michigan, the child had several nannies and night nurses, a pediatrician, and a dermatologist. Accordingly, the trial court did not err by finding that it had "significant connections" jurisdiction under the UCCJEA.

We reject defendant's argument that the trial court erred by failing to hold an evidentiary hearing regarding UCCJEA jurisdiction. Defendant filed a motion for summary disposition regarding the question of jurisdiction and never requested an evidentiary hearing. Moreover, defendant does not specify what facts are contested. For the most part, the parties agreed on the basic facts that supported a finding of jurisdiction. A trial court is "not required to conduct a separate evidentiary hearing when it was satisfied that it was able to sufficiently decide the issue on the evidence before it." *Vittiglio v Vittiglio*, 297 Mich App 391, 406; 824 NW2d 591 (2012). The major contention between the parties was whether defendant intended to live with plaintiff in Michigan, or whether plaintiff intended to live in Florida with defendant. However, "the focus of the UCCJEA concerns a child's actual presence," not the parents' intentions. *Ramamoorthi v Ramamoorthi*, 323 Mich App 324, 339; 918 NW2d 191 (2018).

Defendant also argues that even if the trial court properly determined that it had jurisdiction under the UCCJEA, it should have declined to exercise jurisdiction because Florida was a more convenient forum, given that defendant intended to continue to reside in Florida with the child.

MCL 722.1207 provides:

(1) A court of this state that has jurisdiction under this act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the motion of a party, the court's own motion, or the request of another court.

(2) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including all of the following:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

(b) The length of time the child has resided outside this state.

(c) The distance between the court in this state and the court in the state that would assume jurisdiction.

(d) The parties' relative financial circumstances.

(e) An agreement by the parties as to which state should assume jurisdiction.

(f) The nature and location of the evidence required to resolve the pending litigation, including the child's testimony.

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(h) The familiarity of the court of each state with the facts and issues of the pending litigation.

As to factors (a) and (e), there was no evidence of domestic violence and the parties did not agree on which state should assume jurisdiction. With regard to factor (b), AK had lived the first four months of his life in Michigan, thereafter traveled back and forth between Florida and Michigan for the next five months, and then lived in Florida for another five months before the trial court issued its decision. Factor (b) seems to be neutral because the child's life has been split between both states. With regard to factor (c), the distance between the two states is approximately 1,200 miles. Plaintiff's income is significantly higher than defendant's income for factor (d). For factor (f), the evidence consisted mainly of physician visits in Michigan. As the courts conferred during the UCCJEA conference, the Michigan trial court had more familiarity than the Florida court, and therefore, had the ability to decide the issues more expeditiously than the Florida court, favoring Michigan for factors (g) and (h). Considering the foregoing factors, the trial court did not err by assuming jurisdiction and declining to defer jurisdiction to the Florida court as a more convenient forum. Accordingly, we affirm the trial court's exercise of jurisdiction pursuant to the UCCJEA.

## IV.  THE TRIAL COURT'S CUSTODY DECISION

Defendant challenges several aspects of the trial court's decision to award the parties joint legal and physical custody of AK, including its determination that AK's domicile was in Michigan.

This Court employs three different standards of review when analyzing child-custody decisions.  *Foskett v Foskett*, 247 Mich App 1, 4; 634 NW2d 363 (2001).  A trial court's choice, interpretation, and application of the existing law is reviewed for clear error.  *Id*.  This Court reviews a trial court's findings of fact under the great weight of the evidence standard, whereby the factual findings will be upheld unless "the evidence clearly preponderates in the opposite direction."  *Id*. at 5 (quotation marks and citation omitted).  Discretionary rulings, including the trial court's ultimate determination of custody, are reviewed for an abuse of discretion.  *Id*.  Decisions involving a challenge to a change of a child's domicile are also reviewed for an abuse of discretion.  *Gagnon v Glowacki*, 295 Mich App 557, 565; 815 NW2d 141 (2012).

### A.  DOMICILE

In June 2022, plaintiff filed an emergency motion asking the trial court to order defendant to return AK to Michigan.  In an order dated October 13, 2022, the trial court ordered the child's return to Michigan based on its determination of jurisdiction in Michigan.

When AK was born, plaintiff and defendant executed an affidavit of parentage (AOP) pursuant to the Acknowledgment of Parentage Act, MCL 722.1001 *et seq*.  When an AOP is executed, the mother has "initial custody" of the child, until determined otherwise by a court.  *Foster*, 486 Mich at 363.  MCL 722.1006 provides:

> After a mother and father sign an acknowledgment of parentage, the mother has initial custody of the minor child, without prejudice to the determination of either parent's custodial rights, until otherwise determined by the court or otherwise agreed upon by the parties in writing and acknowledged by the court.  This grant of initial custody to the mother shall not, by itself, affect the rights of either parent in a proceeding to seek a court order for custody or parenting time.

"[T]his portion of the Acknowledgment of Parentage Act 'effectively conditions the parents' ability to execute an AOP on their willingness to allow the mother to be granted 'initial custody' of the minor child . . . .' "  *Sims v Verbrugge*, 322 Mich App 205, 211; 911 NW2d 233 (2017), quoting *Foster*, 486 Mich at 366.  The initial custody granted to the mother includes legal custody.  *Sims*, 322 Mich App at 211.  While plaintiff correctly asserts that this initial grant of custody to the mother does not prejudice a determination of either parent's custodial rights or "*affect the rights of either parent* in a proceeding to *seek a court order* for custody or parenting time," *Foster*, 486 Mich at 366 (emphasis in original), this initial grant of custody was not an "initial custody determination" under the UCCJEA.  Rather, as defendant argues, she had legal custody of the child pursuant to the AOP when she moved to Florida, which had not been set aside when the trial court issued its October 13, 2022 order requiring the child's return to Michigan.

In its March 10, 2023 opinion and order, the trial court stated that AK's domicile was in Michigan because AK's legal residence was in Michigan when plaintiff filed his complaint.

Although the court noted that defendant did not argue that MCL 722.31 allowed it to grant her permission to relocate to Florida with the child, defendant, who had legal custody of the child pursuant to the AOP, was not required to seek permission from the court to move to Florida with the child before the trial court entered its October 13, 2022 order. MCL 722.31 provides:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

> (2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change. This section does not apply if the order governing the child's custody grants sole legal custody to 1 of the child's parents.

> (3) This section does not apply if, at the time of the commencement of the action in which the custody order is issued, the child's 2 residences were more than 100 miles apart. This section does not apply if the legal residence change results in the child's 2 legal residences being closer to each other than before the change.

MCL 722.31(4) instructs that a trial court shall consider five factors, set forth in Subsections (a) through (e), when considering a request to change a child's domicile. However, "[a]ccording to the plain language of the statute, the change-of-domicile factors apply only to petitions for a change of domicile where there is already a custody order…." *Kessler v Kessler*, 295 Mich App 54, 58; 811 NW2d 39 (2011) (citations omitted). When defendant left Michigan on May 20, 2022, there was no court order governing the child's custody then in effect. Pursuant to the AOP, defendant had initial custody of AK and no contrary custody determination had been made. Therefore, defendant was legally free to change AK's domicile by moving to Florida without regard to the restrictions set forth in MCL 722.31. *Kessler*, 295 Mich App at 58. Accordingly, the trial court did not have the authority to order AK's return to Michigan.

Defendant also argues that the trial court's October 13 order affected its later decision regarding AK's established custodial environment, which we discuss later. However, AK's established custodial environment was not affected by the return to Michigan because the move did not change the parties' parenting-time schedules or affect whether the child naturally looked to defendant or plaintiff or both for guidance, discipline, the necessities of life, and parental comfort. The parties kept the same parenting-time order that was then in effect, with plaintiff exercising parenting time every other weekend. Moreover, "[i]n determining whether an established custodial environment exists, it makes no difference whether that environment was created by a court order, without a court order, in violation of a court order, or by a court order that was subsequently reversed." *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995).

Defendant also argues that the trial court erred by later finding in its March 10, 2023 opinion and order that the child's domicile was in Michigan. In custody cases where both parties

live in Michigan and domicile is not at issue, MCR 3.211(C)(1) requires that a judgment or order awarding custody of a minor child provide that the domicile or residence of the child may not be moved from Michigan without the approval of the court who awarded custody. Further, MCL 722.31 provides:

> (4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

> (c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification;

> (d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

> (e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

As discussed above, defendant was able to move to Florida with AK in May 2022 because the court had not yet entered an order determining custody, and defendant had initial custody of AK after the parties signed the AOP. The trial court erroneously ordered AK's return to Michigan without a determination of custody, contrary to the AOP. When the trial court entered its custody order, it included language stating that AK's domicile or residence could not be moved from Michigan without the approval of the judge who awarded custody. MCR 3.211(C)(1).

On appeal, defendant relies on MCL 722.31(3) to argue that the statute "does not apply if, at the time of the commencement of the action in which the custody order is issued, the child's 2 residences were more than 100 miles apart." Plaintiff commenced this action on January 24, 2022, at which time, according to defendant, her residence was in Florida and plaintiff's was in Michigan. Throughout the proceedings, plaintiff consistently argued and testified that defendant lived in Michigan. Defendant testified that she was in Michigan only to pursue a relationship with plaintiff, and then remained in Michigan throughout her pregnancy because of complications that restricted travel. Defendant also testified that she stayed in Michigan for four months after AK was born because AK's pediatrician advised against travel until AK had received his scheduled four-month

-15-

immunizations. The trial court did not address MCL 722.31 in its opinion and order awarding custody, and merely stated that defendant failed to raise the issue at trial. We vacate the trial court's finding of domicile and remand for reconsideration of the child's domicile consistent with MCL 722.31.

## B. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant argues that the trial court erred by failing to make sufficient findings of fact and conclusions of law regarding AK's established custodial environment, and by finding that AK had an established custodial environment with both parties. We disagree.

In actions tried without a jury, a trial court is required to make findings of fact and separately state its conclusions of law. MCR 2.517(A)(1). Brief, definite, and pertinent findings and conclusions on contested matters are sufficient, "without over elaboration of detail or particularization of facts." MCR 2.517(A)(2); *Foskett*, 247 Mich App at 12-13. The court is not required to comment on every matter in evidence or declare acceptance or rejection of every proposition argued. *Fletcher v Fletcher*, 447 Mich 871, 883; 526 NW2d 889 (1994); *MacIntyre v MacIntyre*, 267 Mich App 449, 451-452; 705 NW2d 144 (2005).

The trial court issued a 51-page opinion and order. The first 45 pages are dedicated to summarizing the testimony and evidence presented at trial. The trial court spent six pages analyzing the established custodial environment, custody, best-interest factors, domicile, parenting time, child support, and attorney fees and expenses. In particular, the trial court recited the law concerning an established custodial environment and then stated, "This Court finds that as a threshold matter the minor child has an established custodial environment with both Plaintiff and Defendant. This Court finds that the minor child looks to both parents for love, guidance, and affection." Viewing the trial court's written decision as a whole, its findings of fact and conclusions of law were sufficient to satisfy MCR 2.517(A)(2).

We also disagree with defendant's argument that the trial court erred by finding that the child had an established custodial environment with both parents. The first step when deciding a custody issue is to determine whether a child has an established custodial environment with one or both parents. *Hayes*, 209 Mich App at 387. A court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). Whether an established custodial environment exists is a question of fact, which is to be determined by focusing on the circumstance surrounding the care of the child in the time preceding trial, not the reasons behind the existence of a custodial environment. *Hayes*, 209 Mich App at 388. A custodial environment is established if

> over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c).]

"An established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008),

The custody hearing began in December 2022, when AK was 17 months old, and concluded approximately three months later. For the most part, AK lived with both defendant and plaintiff from his birth until May 2022, when defendant returned to Florida with AK to live there permanently. After the trial court's July 6, 2022 order, plaintiff visited AK in Florida every other weekend from Thursday to Sunday and cared for him independently of defendant. After the trial court ordered AK's return to Michigan in October 2022, defendant returned to Michigan with AK and plaintiff continued his every other weekend parenting time from Thursday to Sunday. Both parties testified regarding the activities they engaged in with AK, and both felt that they had a strong bond with AK. Although the evidence demonstrated that defendant had cared for AK a majority of the time, considering AK's age, the involvement of both parties in the child's life when the parties were together, and plaintiff's regular participation in parenting time after the parties separated, the trial court did not clearly err by finding that AK looked to both parties for guidance, discipline, the necessities of life, and parental comfort. Because the evidence does not clearly preponderate in an opposite direction, we affirm the trial court's finding that an established custodial environment existed with both parties. See *Foskett*, 247 Mich App at 5.

Defendant also argues that the trial court erred by effectively changing AK's established custodial environment when it ordered equal parenting time without making a finding that plaintiff presented clear and convincing evidence that such a change was in AK's best interests. "When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). However, if "parenting time adjustments will not change whom the child looks to for guidance, discipline, the necessities of life, and parental comfort, then the established custodial environment will not have changed." *Id*. at 86. Defendant's argument is based on her position that the child only had an established custodial environment with her. As we have concluded, however, the trial court's finding that AK had an established custodial environment with both parents is not against the great weight of the evidence. Therefore, the equal parenting-time order did not modify AK's established custodial environment with both parents.

## C. BEST-INTEREST FACTORS

Defendant also challenges the trial court's analysis of the statutory best-interest factors in MCL 722.23. We find no error in this regard.

In child-custody disputes, the best interests of the child control. MCL 722.25(1). To determine the best interests of the child, the trial court must consider the factors provided in MCL 722.23. *Foskett*, 247 Mich App at 9. When there is a request for joint custody, "the trial court must also consider whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 14 (citations and quotation marks omitted). A trial court's findings of fact in child custody cases are reviewed under the great weight

of the evidence standard in which this Court will sustain factual findings unless "the evidence clearly preponderates in the opposite direction." *Foskett*, 247 Mich at 5.

Here, the trial court made sufficient findings of fact regarding each best-interest factor. Again, the trial court issued a lengthy opinion in which it first summarized, in great detail, the evidence presented at trial. With regard to the best-interest factors, the court recited each statutory factor, announced its findings for each factor, and announced whether each factor favored one or both parties. The trial court was not required to state its findings with elaboration or detail because brief, definite, and pertinent findings regarding contested matters are sufficient. MCR 2.517(A)(2); *Fletcher*, 447 Mich at 883; *Foskett*, 247 Mich App at 12-13. The trial court's findings were sufficient to satisfy the requirements of MCR 2.517(A)(2).

Defendant also challenges the trial court's findings regarding best-interest factors (a), (b), (c), (d), (f), (h), and (j) in MCL 722.23. The trial court found that factors (a), (b), (c), (d), (f), and (h) favored both parties, and found that factor (j) did not favor either party.

Factor (a) involves consideration of the "love, affection, and other emotional ties existing between" the parents and the child. MCL 722.23(a). The trial court found that both parents loved AK, provided him with affection, and shared a bond with him. Defendant argues that the evidence was uncontroverted that AK clung to her after plaintiff's parenting time and there was no evidence that AK had a similar bond with plaintiff. However, plaintiff testified that AK was always happy to see him and at times ran to him when he arrived for parenting time. Plaintiff also testified that there were times that AK became upset when he returned him to defendant's care. In sum, there was evidence of love, affection, and emotional ties between both parties and the child. The trial court's finding that this factor favored both parents is not against the great weight of the evidence.

Factor (b) concerns the "capacity and disposition of the parties involved to give the child love, affection, and guidance to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court found that both parties were capable of providing AK with love, affection, and guidance. AK was not yet of school age so education was not a focus. The trial court found that both parents observed the Jewish religion and their testimony reflected their willingness to raise AK as Jewish. Defendant argues that plaintiff cannot provide for AK without hiring help, and that plaintiff did not have a relationship with his children from a previous marriage. Regardless of plaintiff's relationship with his other children, both parents testified regarding their love for AK. Moreover, although defendant complained about the lack of time plaintiff spent with her and AK when they lived together, the record demonstrates that plaintiff went to significant lengths to participate in parenting time, including rearranging and reducing his work schedule and by traveling substantial distance to be able to participate in regular parenting time. Neither party's testimony painted the other party in a particularly positive light. Because the trial court was able to observe the parties' testimony and assess their credibility, we cannot conclude that the trial court's finding that this factor favored both parties is against the great weight of the evidence.

Factor (c) involves the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found that both parties were able to provide the child with food, clothing, medical care, or other

remedial care. Defendant argues that plaintiff was oblivious to AK's medical needs and requested medical advice from his friends, rather than the pediatrician. Defendant and her friend testified regarding instances when plaintiff returned AK to defendant's care and AK was vomiting and had diarrhea. They also testified that there were times when plaintiff returned AK to defendant's care with a sunburn, bug bites, or a high fever.

Plaintiff testified that defendant made medical decisions without consulting him. Plaintiff described a parenting-time session in which AK developed bothersome eczema. Plaintiff, a physician, consulted a friend who was a dermatologist and prescribed medication. Plaintiff administered one dose of the medication and notified defendant. Defendant became upset and asked plaintiff to stop applying the medicine, which he did. Plaintiff denied returning AK to defendant's care with a sunburn. Defendant's disagreement with the court's findings regarding factor (c) is primarily based on plaintiff's alleged failure to recognize and attend to AK's medical and remedial care, but considering the conflicting testimony, we must defer to the trial court's ability to weigh the parties' credibility. *Berger*, 277 Mich App at 705. The trial court's finding that this factor favored both parties is not against the great weight of the evidence.

Factor (d) relates to the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court found that during this case, AK had established a routine and continuity in both Michigan and Florida. The court noted that while the parties were in a dating relationship they contemplated dual residency in both Michigan and Florida, and that plaintiff now planned to maintain a domicile in Michigan and defendant in Florida. Defendant argues that the trial court erred by finding that that this factor favored both parties because AK had lived the majority of his life in Florida. However, the evidence showed that the parties met in Florida and spent much of their time traveling back and forth between Florida to Michigan, both before and after the child was born. Defendant initially moved to Michigan to further her relationship with plaintiff. When that relationship ended, defendant returned to Florida with AK because she did not have a home, job, or support system in Michigan. As a partner of his practice, plaintiff was required to continue to live in Michigan as long as he worked as a physician in his practice. As much as the parties argued that AK's home was only in Florida or only in Michigan, the evidence showed that AK had spent considerable time in both states and he will have to spend time with each parent in each state in some capacity. The trial court did not clearly err by finding that this factor favored both parties.

Factor (f) concerns the "moral fitness of the parties involved." MCL 722.23(f). The trial court found that both parties maintained a moral fitness that would not prohibit them from raising AK. Defendant argues that plaintiff was not morally fit because he had allowed his ex-wife to have sole legal and physical custody of his older children and that he had minimal to no contact with them. Apart from plaintiff's admission that he voluntarily gave sole legal and physical custody of his older children to his ex-wife, there was no other evidence explaining plaintiff's relationship with his older children. Whatever plaintiff's relationship with his older children, there was no evidence that any lack of moral fitness affected plaintiff's relationship with AK. The trial court's finding that this factor favored both parties is not against the great weight of the evidence.

Factor (h) involves the "home, school, and community record of the child." MCL 722.23(h). The trial court found that AK had established a community record in both Michigan and Florida. Defendant argues that AK only had an established home and community record in

Florida, where he spent the majority of his time. AK was 17 months old when the custody hearing began and 20 months old when the court issued its order. In *Demski*, 309 Mich App at 451, the trial court found that this factor was not relevant considering the very young age of the child. Similarly, because the child in this case was so young, this factor was not particularly significant and depended largely on the community record the parties had established in the communities in which each of them lived. Regardless of whether the court could have found that this factor was irrelevant or favored both parents, this factor was not particularly significant to the court's ultimate custody decision.

Factor (j) concerns the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent . . . ." MCL 722.23(j). The trial court concluded that this factor did not favor either party. The trial court noted that the parties had become more adversarial as the case progressed, but it also believed that they had demonstrated that once a judgment was entered, they would be able to work together when necessary to encourage and assist with the facilitation of a parental relationship with the other parent. Defendant argues that the evidence supported a finding that this factor favored her because plaintiff had demonstrated that he was willing to disparage defendant in front of AK. However, defendant also demonstrated an unwillingness to facilitate and encourage a close and continuing parent-child relationship with plaintiff, particularly through her unwillingness to allow plaintiff to exercise parenting time without her presence. The trial court's finding that this factor did not favor either party is not against the great weight of the evidence.

In sum, defendant has not demonstrated that the trial court's best-interest findings are against the great weight of the evidence. Having found that AK had an established custodial environment with both parties and that the best-interest factors generally favored both parties, the trial court did not abuse its discretion by awarding the parties joint legal and physical custody of the child.

## V. PARENTING TIME

Both parties argue that the trial court erred in its decisions regarding parenting time. We agree that it is necessary to remand this case for further consideration of parenting time.

MCL 722.27a, the statute that governs parenting time, provides in pertinent part:

> (1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

MCL 722.27a(7) provides that the court may consider the following factors when determining the frequency, duration, and type of parenting time to be granted:

> (a) The existence of any special circumstances or needs of the child.

(b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

(c) The reasonable likelihood of abuse or neglect of the child during parenting time.

(d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

(e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

(f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

(g) Whether a parent has frequently failed to exercise reasonable parenting time.

(h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

(i) Any other relevant factors.

The trial court considered these factors and found that factors (a) and (b) did not apply because AK was more than one year of age and there was no evidence of any special circumstances or needs. Regarding factors (c) and (d), the court found that there was no likelihood of neglect or abuse during parenting time. As for factor (e) (the inconvenience and burden of travel), the trial court found that travel would not "be burdensome for the child for purposes of parenting time." The trial court believed that both plaintiff and defendant could be expected to exercise parenting time in accordance with the court's order for purposes of factor (f). The court further found that neither party had failed to exercise reasonable parenting time with the child, or threatened to or actually kept the child from the other parent with respect to factors (g) and (h). With respect to factor (i) (any other relevant factor), the court simply noted that it had analyzed changes that had happened since the last parenting-time order. Accordingly, the trial court ordered that the parties were to have equal parenting time in two-week increments with exchanges on Saturdays at a Florida airport. The court further ordered that plaintiff was to pay for any roundtrip flights for himself and AK. As noted earlier, this Court's May 10, 2023 order granting defendant's application for leave to appeal vacated the portion of the trial court's order "setting the parties' parenting time in two-week increments alternating between Florida and Michigan, which effectively requires the 22-month-old child to fly from Michigan to Florida or back every two weeks," as an abuse of discretion. *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered May 10, 2023 (Docket No. 365506).

On June 5, 2023, this Court issued an order clarifying its May 10, 2023 order and directed the trial court "to issue an interim parenting time order allowing plaintiff meaningful parenting time in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and plaintiff without requiring excessive travel for the child." *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered June 5, 2023 (Docket No. 365506). In response, the trial court issued an order requiring AK to fly from Florida to Michigan and back approximately every three weeks, rather than every two weeks, for a one-week stay in Michigan with plaintiff.

In order to accomplish equality in parenting time when defendant and plaintiff live in different states, the trial court placed the burden on AK to travel from state to state. Plaintiff cannot realistically spend two weeks every month in Florida because he works full time in Michigan, and therefore, the trial court resolved this dilemma by ordering AK to travel back and forth to afford both parents the same parenting time. This Court has already determined that it was an abuse of discretion to require the child to travel in such a manner every two weeks.

The Michigan Parenting Time Guideline promulgated by the State Court Administrative Office instructs that when parents live far apart, longer periods of parenting time may be considered. Friend of the Court Bureau, Mich Supreme Court, *Michigan Parenting Time Guideline* (Lansing State Court Admin Office), p 23. It also recognizes that "[t]raveling long distances for parenting time can be a burden to a child." *Id.* at 24. In such circumstances, it offers the following suggested schedules:

> Every other weekend.
>
> A three-day weekend each month. If a three-day weekend does not occur during the month, then a two-day weekend.
>
> Extended time during school breaks of more than two consecutive days. School breaks might include spring break, summer break, Thanksgiving weekend, winter break, and mid-winter break.
>
> The parent travels to the child for parenting time. The parent should take advantage of opportunities to meet the child's friends, teachers, coaches, and others important in the child's life.
>
> A combination of these or other options. [*Id.*].

The evidence at trial established that defendant and plaintiff considered a life in which they would travel between Michigan and Florida. Although the parties' testimony regarding their intentions differed, there was evidence that the parties contemplated spending time in both Michigan and Florida. Considering the parties' decision to reside in different states, the trial court must contemplate a parenting-time order that puts the burden on them, rather than the child.

Contrary to plaintiff's assertions that this Court ordered the trial court to fashion an order for *equal* parenting time, this Court ordered the trial court "to issue an interim parenting time order allowing plaintiff *meaningful* parenting time in a frequency, duration, and type reasonably

calculated to promote a strong relationship between the child and plaintiff *without required excessive travel for the child*." *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered June 5, 2023 (Docket No. 365506) (emphasis added). The trial court found that AK had an established custodial environment with both parents when plaintiff had parenting time every other weekend from Thursday to Sunday in Florida. Thus, that schedule appears to have afforded plaintiff with an opportunity for meaningful parenting time that promoted a strong relationship between himself and AK, without imposing an undue travel burden on AK. Moreover, the Michigan Parenting Time Guideline recognizes that in situations where parents live far apart, travelling for parenting time can be a burden to a child, so a court may consider implementing longer periods of parenting time. Such options could include vacations and extended visits, and evolve as the child grows older. Meaningful parenting time does not necessarily require equal parenting time every month, but may permit extended visits throughout the year.

Under the circumstances, we vacate the trial court's interim parenting-time orders, which required AK to travel frequently between Michigan and Florida, and remand for further consideration of an appropriate parenting-time schedule. The trial court should consider the suggestions offered in the Michigan Parenting Time Guideline, such as three or four-day weekends, extended time during holidays or summers when AK could travel to Michigan with plaintiff, and extended time when plaintiff travels to Florida.

## VI. OTHER ISSUES

Defendant argues that the trial court erred when it issued its March 10, 2023 opinion and order deciding custody without determining the issue of child support. We disagree.

MCL 722.24(1) provides:

> In all actions involving dispute of a minor child's custody, the court shall declare the child's inherent rights and establish the rights and duties as to the child's custody, support, and parenting time in accordance with this act.

MCR 3.211(D) provides:

> (1) Any provisions regarding child support or spousal support must be prepared on the latest version of the Uniform Support Order approved by the state court administrative office. This order must accompany any judgment or order affecting child support or spousal support, and both documents must be signed by the judge. If only child support or spousal support is ordered, then only the Uniform Support Order must be submitted to the court for entry. The Uniform Support Order shall govern if the terms of the judgment or order conflict with the Uniform Support Order.

> (2) No judgment or order concerning a minor or a spouse shall be entered unless either:

> (a) the final judgment or order incorporates by reference a Uniform Support Order, or

(b) the final judgment or order states that no Uniform Support Order is required because support is reserved or spousal support is not ordered.

The plain language of MCL 722.24 does not require that the trial court's declaration of the child's rights and the parents' rights and duties as to custody, support, and parenting time all be decided in the same order. And MCR 3.211(D)(2)(b) suggests that bifurcating the issues of custody and child support is permissible if the judgment states that support is reserved. It is clear that the trial court reserved the issue of child support because it ordered the parties to submit their financial information such that their support obligations could be calculated by the Friend of the Court.

In any event, this issue is now moot. In Docket No. 365286, this Court dismissed defendant's claim of appeal from the March 10, 2023 order because it was not a final order. MCR 3.211(D)(a) requires that the final judgment or order incorporate by reference a Uniform Support Order, which is what the trial court's July 5, 2023 final order did. Because defendant has since filed a claim of appeal from the July 5, 2023 order in Docket No. 366777, which is consolidated with this appeal, this issue is moot. See *Silich v Rongers*, 302 Mich App 137, 151-152; 840 NW2d 1 (2013).

Plaintiff argues on cross-appeal that the trial court erred by denying his motions to enforce the parenting-time provisions contained in the trial court's March 22, 2023 judgment. In an order dated April 12, 2023, the trial court denied plaintiff's motion because it concluded that it did not involve an emergency, but the court ordered plaintiff to brief the issue whether a stay of the court's March 10, 2023 opinion and order also stayed the March 22, 2023 judgment. In its April 21, 2023 order, the court denied plaintiff's motion because "enforcement of the parenting time in the Judgment of Custody will violate the Court of Appeals order granting a stay."

When defendant filed her application for leave to appeal on March 29, 2023, she appealed the trial court's March 10, 2023 opinion and order, which included the parenting-time provisions that this Court later vacated. On April 3, 2023, this Court ordered that enforcement of the "March 10, 2023 opinion and order" be stayed pending resolution of defendant's application or further order of the Court. *Kleinfeldt v Stern*, unpublished order of the Court of Appeals, entered April 3, 2023 (Docket No. 365506). In the meantime, on March 22, 2023, the trial court entered its judgment regarding custody, parenting time, and child support, which embodied the same provisions in the March 10 opinion and order. Defendant did not include the March 22 judgment in her application for leave to appeal. Plaintiff argued below, as he does on appeal, that the trial court should have enforced the March 22 judgment because it was not subject to defendant's application for leave to appeal or this Court's April 3, 2023 order staying enforcement of the March 10, 2023 opinion and order pending resolution of the application.

Plaintiff is correct that a court speaks through its written orders and judgments. *City of Sterling Hts v Chrysler Group, LLC*, 309 Mich App 676, 682; 873 NW2d 342 (2015). However, the March 22 judgment states, "the Court having issued its opinion and order on March 10, 2023 and same being submitted pursuant to MCR 2.602(B)(3) as follows . . ." and it proceeded to itemize its orders regarding jurisdiction, custody, residence, domicile, parenting time, and attorney fees as stated in the March 10, 2023 opinion and order. Therefore, any attempt by the trial court to enforce the orders contained in the March 22, 2023 judgment, which expressly referenced the

March 10, 2023 opinion and order, would have violated this Court's stay issued on April 3, 2023, which was still in effect when the trial court denied plaintiff's motions.

Likewise, because enforcement of the parenting-time provisions in the March 10, 2023 opinion and order had been stayed, the trial court did not err by denying plaintiff's motion to order defendant to show cause why she did not produce the child on April 8, 2023, pursuant to the trial court's parenting-time schedule, enforcement of which had been stayed.

## VII. ATTORNEY FEES

Both parties argue that the trial court erred by denying their requests for attorney fees. We disagree.

This Court reviews a trial court's findings of fact underlying a request for attorney fees for clear error. *Sulaica v Rometty*, 308 Mich App 568, 586; 866 NW2d 838 (2014). This Court reviews the trial court's decision whether to award attorney fees for an abuse of discretion. *Id*. at 587. Any questions of law are reviewed de novo. *Id*.

Defendant requested that plaintiff pay her attorney fees pursuant to MCR 3.206(D)(1) and (2)(a), which provide:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

This Court has interpreted this rule "to require an award of attorney fees to the extent necessary to enable a party to prosecute or defend a suit." *Diez v Davey*, 307 Mich App 366, 396; 861 NW2d 323 (2014) (citation and quotation marks omitted). A party requesting attorney fees must establish that the attorney fees were incurred and were reasonable. *McIntosh v McIntosh*, 282 Mich App 471, 483; 768 NW2d 325 (2009) (citation omitted).

The trial court denied defendant's request for attorney fees because it found that defendant "failed to establish that she is unable to pay her attorney fees pursuant to MCR 3.206(2)(a)." Evidence was presented that defendant's yearly gross income was approximately $124,000. Defendant did not present an amount of her attorney fees that she was requesting in her trial brief, and similarly does not do so on appeal. Considering the limited record developed on this issue,

the trial court did not clearly err by finding that defendant failed to establish that she was unable to pay her attorney fees and by denying her request.

Plaintiff requested attorney fees related to his emergency motion to enforce the trial court's parenting-time orders in its March 22 judgment and his April 10, 2023 motion to show cause. He requested attorney fees under MCR 3.206(D)(2)(b). As discussed earlier, the trial court properly denied plaintiff's motions because enforcement of the court's parenting-time provisions had been stayed. Therefore, the trial court did not err by denying plaintiff's request for attorney fees related to the filing of those motions.

## VIII. REASSIGNMENT TO A NEW JUDGE

Finally, plaintiff argues that this case should be reassigned to a new judge on remand because the trial judge would have difficulty putting aside previously expressed views or findings and the trial judge repeatedly failed to follow this Court's previous instructions. We disagree.

To preserve an issue of judicial bias it is incumbent on the party asserting the claim to raise it before the trial court. *Illes v Jones Transfer Co (On Remand)*, 213 Mich App 44, 56 n 2; 539 NW2d 382 (1995). Plaintiff failed to raise this issue in the trial court. Therefore, this issue is unpreserved. This Court has no obligation to consider an unpreserved issue. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2. "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. (quotation marks and citations omitted). Because it would be manifestly unjust to remand this case for further proceedings before the same judge if that judge is unable to fairly preside over the case, we will overlook the preservation requirement.

In support of his argument, plaintiff asserts that since this Court's April 3 stay order, the trial court has been paralyzed and partial to defendant. He complains that the court has refused to enforce its March 22, 2023 judgment, despite that this Court only stayed the March 10 opinion and order. Plaintiff argues that the trial court also refused to enforce its previous October 14, 2022 order requiring the child's return to Michigan, and refused to order temporary parenting time and makeup parenting time. Plaintiff further asserts that the trial court threatened to hold the attorneys in criminal contempt if they spoke out of turn. He also complains that the trial judge's July 6, 2023 order for interim parenting time failed to comply with this Court's June 5, 2023 order requiring the court to issue a parenting-time order allowing him meaningful parenting time in a frequency, duration, and type reasonably calculated to promote a strong relationship between him and AK without requiring excessive travel for the child.

As explained in *Kuebler*, ___ Mich App at ___; slip op at 24:

When considering whether to remand to a new judge, the "general concern ... is whether the appearance of justice will be better served if another judge presides over the case." *Bayati v Bayati*, 264 Mich App 595, 602; 691 NW2d 812 (2004). This Court "may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment

-26-

is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Id*. at 602-603. This Court will not, however, "remand to a different judge merely because the judge came to the wrong legal conclusion. Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying." *Id*. at 603.

"[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible' and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (citations omitted). Although we have found that the trial court made some erroneous rulings regarding domicile and parenting time, plaintiff failed to present any evidence of "a deep-seated favoritism or antagonism that would make fair judgment impossible." See *id*. Many of plaintiff's complaints also relate to defendant's failure to include the trial court's March 22, 2023 judgment in her application for leave to appeal, which caused confusion over the enforceability of the parenting-time provisions in the judgment. However, plaintiff also contributed to the trial court's failure to order temporary parenting time by insisting that the court could still enforce the parenting-time schedule provided for in the March 22 judgment, which was clearly identical to the parenting-time schedule in the March 10 opinion and order that this Court stayed and later vacated. Therefore, we decline plaintiff's request to order reassignment to a different judge on remand.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra